38567.   DIXON v. DIXON.

DECIDED FEBRUARY 17, 1961.

*Benjamin Smith, Jr., Leon A. Wilson,* for plaintiff in error.
*Bennett, Pedrick & Bennett,* contra.

FELTON Chief Judge. The petition charges that the following acts of negligence caused the tragic death of the plaintiff's five-year-old son: "a.   Failure to ascertain if said vehicle could

be moved with reasonable safety before backing same; b. Failure to use reasonable care in anticipating the presence of small children playing near the automobile; c. Starting a parked vehicle without first ascertaining if same could be moved with reasonable safety; d. Failure to warn said small children by voice or appropriate horn signal before backing said vehicle."

The record in this case reveals that the only witness to the accident is the defendant himself, whose testimony was taken upon call by the plaintiff for the purpose of cross-examination. There is thus no conflict in the evidence.

The defendant was the grandfather of the deceased. The tragedy occurred on Thanksgiving Day. The plaintiff and her two children had been visiting the defendant for about a week. The defendant, a minister of the Gospel, had an appointment to take part in a Thanksgiving Day service in a nearby church. About ten o'clock in the morning he left the house for the first time and went to town for a newspaper. When he left to get the newspaper, he saw his grandchildren playing on the lawn across the street from his house with a ball and with some pine burrs they had picked up. In addition to the grandchildren there were several other children—about eight altogether. The area was unfenced, and there were a lot of pine trees on the lawn. When the defendant came back from town, the children were still playing. He went into the house, read the newspaper, and then noticed that it was time for him to leave in order to keep his appointment at the church. He then went out into the yard to enter the car, but, realizing that he had not told his wife he was leaving, he went back into the house, told her he was going, and returned to the car. Then, as the testimony further shows, "I looked over the car and saw the children was out across the street. Q. Did you count them at that time, Mr. Dixon? In other words, can you tell us if all of them were across the street—all eight of them? A. No, sir; I didn't count them. Q. You just saw a group of children over there? A. That's right. Q. And you can't state whether or not this Lin, your grandson, was in that group or not, can you? Do you remember seeing him specifically the first time you came out before you went to church? A. Yes, sir. Q. You remember seeing

him across the street? A. Yes, sir. Q. Then, later on what happened? A. Well, I went back in the house, and when I came back I looked out there and they were still out there, and I got in the car and cranked up, and I cut the wheel sharp to the left to turn around as I backed up, and the—the—the road there was dry and the children had been playing there, all up and down in the lane there where there was sand, and they had created some little unlevelness in the sand, and when I backed up I felt the wheel run—I thought it was on that sand, and when I backed up the child jumped up in front of the car and says, 'Grandpa!' And I said, 'Well, I bet I run over that child's hand,' and I got out and went to him and taken him up in my arms and taken him in the house; and I had a feeling, though, when I picked him up, even though he was talking to me and trying to say things and trying—kind of whining like a child would do—I taken him inside the house, and I had a feeling, though, when I picked him up, even though he was talking to me and trying to say things and trying—kind of whining like a child would do—I taken him inside the house, and I had a feeling that it was serious—a feeling came over me and said it was serious; and my son—one of my sons was in the house—taken the child out of my arms; so I picked up the 'phone and called the operator and asked the operator to get the ambulance quick." The defendant's testimony indicated that after he had entered the house to tell his wife he was gone and had come back, he went immediately to the left front door and entered the car, that he did not go around the car or the other side of the car, that he did not look on the roadway immediately behind his car, and that the car was between him and where the children were playing. He did not recall whether he looked in the rear-view mirror when he started to back out, but he testified that he turned around and looked behind him out the back window as he backed up. He did not open the door and look around the side of the car. He did not blow the horn; he did not warn the children or call to them that he was getting ready to drive off and back up. From his testimony it appears that he did not look to either side as he backed up. The defendant testified further that the children were running and jumping at play as he came

to get in the car; that it was necessary for him to back completely across the road upon the lawn and around a pine tree in order to turn around and to go out onto the Brunswick Highway.

A photographer testified that five photographs which the plaintiff introduced in evidence were taken the day before the trial. He testified that he measured the distance from the front porch to the point where the front bumper of the defendant's car was, as shown in the picture, 30 feet, that from the front porch to a camphor tree shown in the picture at the back of the car was 90 feet 11 inches, and from the front door of the car to the camphor tree was 55 feet 8 inches. The testimony of the defendant identifies the camphor tree as the tree beyond which the children were playing. The petition charged that the defendant had backed the car approximately six feet when it ran over the deceased. This allegation was admitted by the defendant.

It seems to us that it was a jury question whether, under the circumstances, the defendant was negligent. The defendant saw the children playing across the street a short time before the child was run over. At that time he noticed that the deceased child was among those playing across the street. When he came back out of the house he again looked across the street and saw the children playing but did not count them and did not ascertain for sure whether his grandchild was in the group. To pinpoint the issue, it seems to us that it was a question for the jury to decide whether the defendant was negligent in assuming, under the circumstances, that his grandchild was still playing with the other children across the street. In this view, the court did not err in overruling the motion for a new trial based solely on the general grounds.

*Judgment affirmed. Carlisle, Nichols, Frankum and Jordan, JJ., concur. Townsend, P. J., and Bell, J., dissent.*

BELL, Judge, dissenting. The evidence in this case bearing upon the negligence of the defendant is so clear and indisputable as to demand as a matter of law a finding by the jury of liability. Accordingly, a verdict for the plaintiff in some amount was demanded as a matter of law.

In this case only one witness, the defendant himself, called

for purposes of cross-examination, presented any testimony bearing upon the question of negligence in the homicide of the child. Casting the extraneous portions aside, the pertinent testimony shows simply and clearly that the defendant, at the time he began backing his car, knew there were eight children playing in the yard or across the street and that they had been playing around his parked car. Notwithstanding this knowledge, the defendant got into his car, saw that *some* children were playing across the street but did not count them to see that all were there, merely looked through his rear window and proceeded to back his car turning sharply to the left, struck and fatally injured his grandchild after backing only six feet. In describing this backing up procedure, the defendant testified that "the road there [where he was backing up] was dry and the children had been playing there all up and down in the lane where there was sand, and they had created some little unlevelness in the sand, and when I backed up I felt the wheel run—I thought it was on that sand—." This testimony demonstrates conclusively that the defendant knew that the children had been playing around his car and in the very spot where he was backing. Under these circumstances he should have foreseen that a child might be in the path of his car, and it was his duty to ascertain this fact. As a matter of law he was negligent in not doing so.

Under numerous decisions of our court, a child 5 years and 1 week old, as a matter of law, is too young to be chargeable with the failure to exercise due care for his own safety, or with any contributory negligence. *Riggs v. Watson,* 77 Ga. App. 62, 63 (47 S. E. 2d 900). "Motorists owe very young children a greater duty than they owe to normal adults." *Christian v. Smith,* 78 Ga. App. 603, 606 (51 S. E. 2d 857). While the verdict of the jury is conclusive as to disputed questions of fact, and the courts must not usurp this exclusive function, nevertheless the determination of matters of law is equally the exclusive duty of the courts and should not be submitted for decision to the jury. Here the facts show as a matter of law that there was negligence, and a verdict for the plaintiff in some amount was demanded.

Presiding Judge Townsend expresses agreement with this dissent, and has asked that he be recorded as concurring with it.